WHITMAN, WARD & LEE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ARNOLD & WINSOR COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61552, 61553. Promulgated January 5, 1934.

*Oscar McPeak, Esq.,* for the petitioners.
*Bernard D. Hathcock, Esq.,* for the respondent.

OPINION.

MATTHEWS: These proceedings, which were duly consolidated for hearing, are for the redetermination of deficiencies in income tax for 1928 asserted against the petitioners as follows: Whitman, Ward & Lee Co., $8,383.93; Arnold & Winsor Co., $960.50.

The issue presented is identical in each case, namely, whether the respondent erred in determining that the petitioner was taxable on the basis of a separate income tax return for the entire taxable year. Each petitioner is contending that it was a subsidiary of the General Foods Co. for a part of the year 1928, that its income for the period of affiliation was properly included in a consolidated return filed by the affiliated corporations for the taxable year, and that this consolidated return furnishes the correct basis for the determination of its tax liability during the period of affiliation.

The cases were submitted upon a stipulation of facts entered into by the parties, which reads as follows:

1. During the taxable year and at all times hereinafter mentioned Whitman, Ward & Lee Company and Arnold & Winsor Company were corporations duly organized and existing under the laws of the Commonwealth of Massachusetts, engaged in catching or buying, preparing for market, and marketing fish and other sea foods.

2. Whitman, Ward & Lee Company on March 15, 1929, made and filed a return for the period January 1, 1928, to February 25, 1928, with the Collector of Internal Revenue for the District of Massachusetts.

3. Arnold & Winsor Company on March 15, 1929, made and filed a return for the period January 1, 1928, to March 31, 1928, with the Collector of Internal Revenue for the District of Massachusetts.

4. The net income of Whitman, Ward & Lee Company for the period February 26, 1928, to December 31, 1928, and the net income of Arnold & Winsor

Company for the period April 1, 1928, to December 31, 1928, were each included in a consolidated return for the taxable year, which return was, on March 15, 1929, filed by General Foods Company, General Seafoods Corporation (N.Y.), General Seafoods Corporation (Mass.), and these petitioners, with the Collector of Internal Revenue for the District of Massachusetts.

5. General Foods Company was a Delaware corporation organized on January 21, 1926, and dissolved on January 24, 1929. Its name prior to December 9, 1927, was General Seafoods Corporation, and was on that date changed to General Foods Company.

6. From January 26, 1926, to January 1, 1929, General Foods Company owned continuously at least 95% of the capital stock, exclusive of non-voting stock limited and preferred as to dividends, of General Seafoods Corporation (N.Y.), a New York corporation organized on July 24, 1924, and dissolved on July 25, 1932.

7. From July 25, 1927, to January 1, 1929, General Foods Company owned continuously at least 95% of the capital stock, exclusive of non-voting stock limited and preferred as to dividends, of General Seafoods Corporation (Mass.), a Massachusetts corporation organized on July 25, 1927, as a subsidiary of General Foods Company.

8. From February 26, 1928, to January 1, 1929, General Seafoods Corporation (Mass.) owned continuously at least 95% of the capital stock, exclusive of non-voting stock limited and preferred as to dividends, of Whitman, Ward & Lee Company, petitioner herein, a Massachusetts corporation organized on May 19, 1911.

9. From April 1, 1928, to January 1, 1929, General Seafoods Corporation (Mass.) owned continuously at least 95% of the capital stock, not including non-voting stock limited and preferred as to dividends, of Arnold & Winsor Company, petitioner herein, a Massachusetts corporation organized on March 1, 1911.

10. On the basis of the said stock ownership the Commissioner has determined that the foregoing corporations were affiliated within the meaning of Section 240 of the Revenue Act of 1926 and Section 142 of the Revenue Act of 1928 for taxable (calendar) years and periods as follows:
Period January 26, 1926,
 to December 31, 1926—Parent Company:
                       General Seafoods Corporation (Del.)
                       Subsidiary:
                       General Seafoods Corporation (N.Y.)
        Year 1927—Parent Company:
                       General Foods Company, formerly
                       General Seafoods Corporation (Del.)
                       Subsidiaries:
                       General Seafoods Corporation (N.Y.)
                       General Seafoods Corporation (Mass.) from July 25,
                          1927.
        Year 1928—Parent Company:
                       General Foods Company:
                       Subsidiaries:
                       General Seafoods Corporation (N.Y.)
                       General Seafoods Corporation (Mass.)
                       Whitman, Ward & Lee Company from February 26,
                          1928,
                       Arnold & Winsor Company from April 1, 1928.

11. The five corporations hereinabove mentioned were not, during the taxable year 1926, the taxable year 1927, or the taxable year 1928, affiliated with any other corporation.

12. From the time of its organization on July 24, 1924, to January 26, 1926, General Seafoods Corporation (N.Y.) was engaged in the acquisition and development of patents, processes and inventions relating to the quick-freezing of fish and other foods.

13. On January 26, 1926, the entire assets and liabilities of General Seafoods Corporation (N.Y.), were, pursuant to a plan of reorganization, transferred and conveyed to General Foods Company (then General Seafoods Corporation, Delaware) in exchange for the issue by the latter corporation of its Class "A" stock to holders of Class "A" stock of General Seafoods Corporation (N.Y.), share for share, and its Class "B" stock to holders of Class "B" stock of General Seafoods Corporation (N.Y.), six shares for one. As part of this transaction the Class "A" stock of General Seafoods Corporation (N.Y.) was retired and its Class "B" stock was transferred to General Foods Company. Immediately after the transfer of all its assets and liabilities to General Foods Company (then General Seafoods Corporation, Delaware) pursuant to this reorganization, General Seafoods Corporation (N.Y.) became on January 26, 1926, and remained continuously to the date of its dissolution on July 25, 1932, a wholly dormant corporation which, throughout this period, transacted no business, had no assets or liabilities, kept no books of account, and had no income, expenses or losses.

14. During the taxable year 1926 General Foods Company (then General Seafoods Corporation, Delaware) was engaged in the development of the patents, processes and inventions, relating to the quick-freezing of fish and other foods, which it had acquired in reorganization of General Seafoods Corporation (N.Y.) on January 26, 1926.

15. On or before March 15, 1927, General Foods Company (then General Seafoods Corporation, Delaware) and General Seafoods Corporation (N.Y.) each filed for the taxable year 1926 a separate income tax return on Treasury Department Form 1120 showing no income and no deductions. The said returns were accepted by the Commissioner as filed, and no change was made therein in his determination of the tax liability of the said two corporations for that year.

16. General Foods Company commenced the exploitation of the foregoing patents, processes and inventions during the taxable year 1927, and on July 25, 1927, organized an operating subsidiary, General Seafoods Corporation (Mass.), to which was transferred that portion of its business relating to fish and other sea foods.

17. On or before March 15, 1928, without having theretofore secured the permission of the Commissioner to change the basis of filing returns, General Foods Company, General Seafoods Corporation (N.Y.), and General Seafoods Corporation (Mass.), made and filed with the Collector of Internal Revenue for the District of Massachusetts a consolidated return for the taxable year 1927 showing net income or net loss of the several companies, and consolidated net loss, as follows:

| Corporation | Net Income | Net Loss |
|---|---|---|
| General Foods Company, formerly General Seafoods Corporation (Del.) | None | $162,200.64 |
| General Seafoods Corporation (N.Y.)—Inactive | None | None |
| General Seafoods Corporation (Mass.) | None | $13,530.32 |
| Consolidated Net Loss | | $175,730.96 |

18. The Commissioner has not at any time since the date such return was made and filed for the taxable year 1927 notified General Foods Company, General Seafoods Corporation (N.Y.) and General Seafoods Corporation (Mass.), or any of them, that separate returns should be made and filed for that year, nor has he at any time since the date such return was made and filed given to the said corporations, or any of them, any notice, other than that represented by the notices of deficiency for the taxable year 1928 mailed by him to the petitioners herein on December 3, 1931, and other than that represented by Departmental Regulations promulgated by the Treasury Department on August 28, 1926 pursuant to the Revenue Act of 1926, that the return for the taxable year 1927 was not accepted as filed or that separate returns should have been made and filed for that year. No separate return for the taxable year 1927 has at any time been made or filed by any of the said three corporations. No waiver extending the period for assessment or collection or for assessment and collection of tax for the year 1927 has at any time been filed by the said three corporations, or any of them.

19. On March 15, 1929, without having theretofore secured the permission of the Commissioner to change the basis of filing returns, General Foods Company, General Seafoods Corporation (N.Y.), General Seafoods Corporation (Mass.), and the petitioners herein, made and filed with the Collector of Internal Revenue for the District of Massachusetts a consolidated return for the taxable year 1928 showing net income or net loss of the several companies, and consolidated net loss, as follows:

| Corporation | Net Income | Net Loss |
|---|---|---|
| General Foods Company | | $121,862.27 |
| General Seafoods Corporation (N.Y.)—Inactive | None | None |
| General Seafoods Corporation (Mass.) | | 137,200.10 |
| Whitman, Ward & Lee Company for Period Febr. 26, 1928, to December 31, 1928 | $69,866.10 | |
| Arnold & Winsor Company, for Period April 1, 1928, to Dec. 31, 1928 | 10,254.23 | |
| Consolidated Net Loss | | $178,942.04 |

20. A taxable net income of $12,620.97 was reported by Whitman, Ward & Lee Company in the separate return filed by it for the period January 1, 1928, to February 25, 1928, and a tax of $1,514.52 was assessed and paid thereon.

A taxable net income of $6,525.96 was reported by Arnold & Winsor Company in the separate return filed by it for the period January 1, 1928, to March 31, 1928, and a tax of $693.24 was assessed and paid thereon.

21. The consolidated net worth of the affiliated group immediately preceding the acquisition by General Seafoods Corporation (Mass.) of Whitman, Ward & Lee Company, petitioner herein, on February 26, 1928, was not more than $1,275,000. The net worth of Whitman, Ward & Lee Company on February 26, 1928, was $498,157.61.

The consolidated net worth of the group immediately preceding the acquisition by General Seafoods Corporation (Mass.) of Arnold & Winsor Company, petitioner herein, on April 1, 1928, was not more than $1,750,000. The net worth of Arnold & Winsor Company on April 1, 1928, was $73,926.26.

22. In his determination of the tax liability of each of these petitioners for the taxable year the Commissioner has ruled as follows:

General Foods Company filed a separate return in 1926, which constituted an election. Inasmuch as permission was not granted by the Commissioner to change the basis of filing returns for the year 1927 or 1928 from

separate to consolidated, the audit is being made on the basis of separate returns for the year 1928.

The deficiencies in income tax of these petitioners determined by the Commissioner for the taxable year are based exclusively upon such ruling.

23. If the said ruling of the Commissioner, that the tax liability of each of these petitioners should be determined upon the basis of a separate return for the full calendar year 1928, be approved by the Board, it is stipulated and agreed that the amount of the deficiency determined by him for the taxable year in each case, being $8,383.93 for Whitman, Ward & Lee Company and $960.50 for Arnold & Winsor Company, is correct. If the said ruling be not so approved by the Board, it is stipulated and agreed that there is no deficiency in the income tax of either of these petitioners for the taxable year.

It will be observed that there is no dispute with respect to the computation of the deficiencies which have been asserted and it has been agreed by the parties that there is no deficiency in either case if the Board does not approve the ruling of the respondent that the tax liability of each of these petitioners should be determined upon the basis of a separate return for the full calendar year 1928. The respondent's ruling is based on the theory that the General Seafoods Corporation, the Delaware corporation, which subsequently changed its name to General Foods Co., was affiliated with the General Seafoods Corporation, the New York corporation, from January 26 to December 31, 1926, and that the filing of separate returns for 1926 by these two corporations constituted an election to make separate returns, which election was binding, in the absence of permission to change the basis, so that the tax liability for 1928 of each corporation belonging to the enlarged affiliated group should be computed on the basis of a separate return. For the purpose of avoiding confusion we shall hereinafter refer to the parent company as the Delaware corporation and the other two companies bearing the name of General Seafoods Corporation will be designated as the New York corporation and the Massachusetts corporation.

The provisions of section 142 (a) of the Revenue Act of 1928,[1] which are substantially the same as those contained in section 240 (a) of the Revenue Act of 1926, are set out in the margin.

There is abundant authority to support the proposition that, where an election has been made and separate returns have been filed by affiliated corporations, the addition to the affiliated group of one or more corporations in a succeeding year does not entitle the several

[1] SEC. 142. CONSOLIDATED RETURNS OF CORPORATIONS—TAXABLE YEAR 1928.

(a) *Consolidated returns permitted.*—Corporations which are affiliated within the meaning of this section may, for the taxable year 1928, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return for the taxable year 1927 was made upon either of such bases, return for the taxable year 1928 shall be upon the same basis unless permission to change the basis is granted by the Commissioner.

companies to make a new election to file a consolidated return without consent of the Commissioner. *Imperial Assurance Co.*, 19 B.T.A. 1068; *Swift & Co.* v. *United States*, 38 Fed. (2d) 365; *Sweets Co. of America* v. *Commissioner*, 40 Fed. (2d) 436. Likewise, where one corporation, a member of an affiliated group, files a separate return the remaining corporations may not file a consolidated return of their income, but must file separate returns. *Apartment Corp.*, 17 B.T.A. 876; *Fontana Union Water Co.*, 24 B.T.A. 1045. It has also been held that, where a consolidated return has been filed for one year, corporations thereafter coming into the group have no right of election to file separate returns, but must join in the consolidated return because the consolidated return must include all the affiliated corporations. *Southern Power Co. et al.*, 17 B.T.A. 962; affd., *Duke Power Co.* v. *Commissioner*, 44 Fed. (2d) 543; certiorari denied, 282 U.S. 903; *950 Park Avenue Corp.*, 20 B.T.A. 288.

A statement of these principles, however, does not serve to dispose of the situation presented in the instant case. Although the respondent has treated the Delaware corporation as having been affiliated with the New York corporation for the period January 26 to December 31, 1926, and has considered that these two corporations elected to make separate returns for 1926, within the meaning of the statute, when each corporation filed a separate income tax return on Form 1120, showing no income and no deductions, we are of the opinion that the facts set out in the above-quoted stipulation clearly show that no affiliation existed in 1926 and that the filing of a consolidated return for 1927 by the Delaware corporation and the Massachusetts corporation constituted the first election by an affiliated group. It appears to us that the New York corporation was completely liquidated on January 26, 1926, when all its assets and liabilities were transferred to the Delaware corporation pursuant to the plan of reorganization described in paragraph 13 of the stipulation, and that thereafter the New York corporation was a mere empty shell, transacting no business and having no income, expenses or losses. The record does not disclose what disposition was made of the class B stock of the New York corporation, but it was expressly stipulated that the New York corporation became on January 26, 1926, and remained continuously to the date of its dissolution on July 25, 1932, a wholly dormant corporation which had no assets or liabilities. There was, therefore, nothing to consolidate with the newly organized Delaware corporation after January 26, 1926, until in July 1927, when there was organized an operating subsidiary, the Massachusetts corporation, to which there was transferred that portion of the business which related to fish and other sea foods. The Delaware corporation and the Massachusetts corporation elected to,

and did, file a consolidated return for 1927 in accordance with the provisions of the statute. Although this consolidated return for 1927 listed the New York corporation as a subsidiary, it showed on its face that the New York corporation was inactive, reporting no income and no loss, so that the consolidated return was actually the return of the Delaware corporation and its one live subsidiary, the Massachusetts corporation.

There are several cases to which we will briefly refer, the facts of which are not exactly on all fours with those of the instant case but which, upon careful analysis, appear to us to support the conclusion which we have reached herein.

In *Aluminum Goods Mfg. Co.* v. *Commissioner*, 56 Fed. (2d) 568; affd., 287 U.S. 544, the court said:

The statute governing affiliated returns contemplated its application to active companies only. It would be a legal and commercial impossibility for a going corporation to affiliate with a corpse—a mere shell of a former corporation. The activities of a dissolved corporation are nil. Its assets amount to a cipher. To add nullities and a cipher to a live company's capital and to its operation would produce no change in the return.

In *Duplex Envelope Co.*, 21 B.T.A. 692, a subsidiary corporation was organized in July 1922 for the purpose of taking title to certain real estate owned by the petitioner on which the subsidiary intended to erect a building for commercial uses. The subsidiary formally perfected its organization in 1922, but transacted no business, had no assets or liabilities, kept no books, received no income and issued no capital stock until in June 1923. No return was filed by the subsidiary in 1922. The petitioner (the parent company) filed a separate income tax return for 1922 and a consolidated return for 1923. The Board held that from the date of its incorporation until June 1923 the subsidiary corporation was wholly dormant and that, under the circumstances, the year 1923 was the first taxable year in which the petitioner was confronted with the election of filing either separate returns or one consolidated return. It was held further that in its return for 1923 petitioner properly elected to file consolidated returns for that and subsequent years.

In *National Iron Works*, 22 B.T.A. 382, the petitioner was a subsidiary corporation which was organized in 1922 to take over certain assets acquired by a bank at a foreclosure sale, which assets were handled by the bank until January 17, 1923, on which date the petitioner issued its stock to the bank in consideration of the transfer of these assets to the petitioner. The Board held that the petitioner corporation and the bank became affiliated for the first time on January 17, 1923, and the filing erroneously of a separate return for 1922 in the petitioner's name did not preclude the filing

of a consolidated return for the period January 17 to December 31, 1923. The Board said:

> Here we have a corporation in embryo which had no stock, owned no property, and had no income, gross or otherwise. There was nothing to consolidate. The income returned for 1922 in its name was the income of the bank derived from the property of the bank—property which was not acquired by petitioner until January 17, 1923.

See also, with respect to the election of a new group of affiliated corporations to make a consolidated return, the case of *Albert Leon & Son, Inc.*, 29 B.T.A. 251, and the cases cited therein.

The view which we have taken herein appears to be consistent with that expressed by the respondent in a published ruling, G.C.M. 8093, C.B. IX-1, 147, 151, which reads in part as follows:

> * * * There are no doubt cases of inactive companies kept alive for charter purposes only, or of comparatively inactive companies with a negligible income, and other cases, where the filing of separate returns by minor subsidiaries came about by reason of mere accidental causes, in which the tax as determined on the returns as actually filed is not materially different from the total tax of the group on the basis of a single consolidated return.
>
> *       *       *       *       *       *       *
>
> In the practical application of the words "substantial unanimity of the affiliated corporations", hereinabove mentioned in this paragraph, inactive corporations may be ignored. * * *

For the reasons stated above, we hold that the respondent erred in determining that the petitioners herein were taxable on the basis of separate income tax returns for the full calendar year 1928.

*Judgment will be entered for the petitioners.*